ELIZABETH H. KEEFE *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

EULA KEEFE, *p. a. vs.* SAME.

DECEMBER 23, 1937.

PRESENT: Flynn, C. J., Moss, Baker and Condon, JJ.

424

Moss, J. These are two actions on the case to recover damages suffered by the plaintiffs respectively, by reason of personal injuries sustained by them, while they were passengers in a one-man trolley car operated by an employee of the defendant, in a collision which occurred at the intersection of Broad and Summer streets in the city of Providence, between that car and a fire truck operated by employees of the fire department of said city, the plaintiffs alleging that this collision was caused by negligent operation of the car. Eula Keefe is a daughter of Elizabeth H. Keefe and was nineteen years old at the time of the collision and was still a minor at the time when she brought her action. No negligence by either of the plaintiffs is claimed by the defendant.

The cases were tried together before a jury in the superior court and the trial resulted in a verdict for the mother for

$5000 and a verdict for the daughter for $2000. In each case the defendant filed a motion for a new trial on the grounds that the verdict was against the evidence and against the law, and failed to do substantial justice between the parties, and that the damages awarded were excessive. The ground of newly discovered evidence was also stated, but has been abandoned.

At the hearing on these motions the trial justice decided against the defendant on all the other grounds but sustained the motions on the ground of excessive damages. In the mother's case he decided that if she would, within five days, remit all of the verdict in excess of $3500, the motion for a new trial was denied, otherwise it was granted. In the daughter's case he decided that if she would, within five days, remit all of the verdict in excess of $1500, the motion for a new trial was denied, otherwise it was granted. The plaintiffs filed remittiturs accordingly.

The cases are now before us on identical bills of exceptions by the defendant, setting forth, in each case, exceptions to the denial of its motion for a new trial, to the denial of its motion for the direction of a verdict in its favor at the conclusion of all the evidence, to a ruling by the trial justice during the trial denying a motion by the defendant that the cases be taken from the jury and passed, to certain parts of the charge to the jury, to the refusal of the trial justice to charge the jury as requested by the defendant; and setting forth also thirty-four exceptions to rulings on the admissibility of evidence.

The collision occurred early in the afternoon of August 18 and the weather and driving conditions were good. Broad street in the vicinity of the collision runs approximately east and west and is forty-six feet wide between curbs. The sidewalks are ten feet wide. There are two street car tracks about five feet apart and each of them is sixteen feet from the nearer curb. The northerly track is for cars moving from the center of the city in a westerly direction and the southerly track for cars moving in the opposite direction.

The distance from the southerly building line of Broad street, at the southeasterly corner of the intersection, to the south rail of the outbound car track is about thirty-six feet.

Summer street, in the vicinity of the collision, runs approximately north and south and is twenty-four feet wide between curbs. There is no car track on it and it continues straight across Broad street. Traffic at the intersection was regulated by automatic signal lights. The light regulating outbound traffic on Broad street was on a pole located on the northerly side of that street a few feet west of the northwest corner of the intersection. The signal light regulating northbound traffic on Summer street was located on the easterly side of that street a few feet north of the northeasterly corner of the intersection. The four corners of the intersection were occupied by buildings extending to the building lines. There was a pole with a white band round it on the northerly side of Broad street thirty-four feet east of the east curb of Summer street.

The plaintiffs had boarded the car a few blocks east of this intersection and were sitting near the rear end of the front lengthwise seat on the right-hand side of the car, so that they were eight feet back of the operator, or a little more. The car did not stop in the long block between Summer street and Stewart street, which is the next one to the east, but continued at a good rate of speed past the white pole, and proceeded into the intersection without slowing down. When the front end had gone a few feet beyond the center of the intersection, there was a violent collision between the left side of its front end and the right side of the front end of the fire truck, which had come north from a fire station on Summer street, some blocks to the south, and had entered the intersection, those in charge of it intending to drive across Broad street and along the continuation of Summer street in order to get to a fire alarm box some blocks to the north, in response to a fire alarm.

The operator of the fire truck, seeing the car, had turned the truck to the left, which accounts for the fact that the

car and truck came together a little to the west of the center of the intersection. The car was derailed by the impact and came to a stop with its front end beyond the westerly building line of Summer street. At the time of the collision and for some minutes before that, the signal light for northerly traffic on Summer street was red. The signal light for outbound traffic on Broad street had been green from about the time when the car passed the middle of the block between Stewart and Summer streets, but there was conflicting testimony as to whether or not it had changed to amber before the car had entered the intersection.

From the white pole above mentioned, on the north side of Broad street, to a pole directly opposite on the south side, a wire was stretched across overhead bearing a sign over the outbound track: "Outbound cars stop here," referring to trolley cars. There was a conflict in the testimony as to whether at the time of this collision it also bore a sign, "Fire crossing." Be that as it may, there was undisputed testimony that this intersection was the usual crossing for fire apparatus going from the fire station on Summer street in response to alarms for fires to the north of Broad street in that general section of the city.

An ordinance of the city of Providence, then in force, was introduced in evidence, as follows: "Fire department, police, ambulance and United States mail vehicles shall have the right of way in any street and through any procession. Every driver of a vehicle, on approach of any apparatus or wagon of the fire department responding to any alarm of fire or of any ambulance, shall immediately cause such vehicle to be drawn up as near as practicable to the right-hand curb and parallel thereto and brought to and kept at a standstill, until such apparatus, wagon or ambulance has passed, and on such approach every driver of a street railway car shall immediately cause the same to be brought to and kept at a standstill, until such apparatus, wagon or ambulance has passed."

The driver of the fire truck and a captain in the fire department, who was with him on the seat of the truck, testified that its siren was blown continuously and loudly from the time when the truck left the fire station until after the collision. The plaintiffs and one other passenger in the trolley car testified that they heard the sound of the siren, shrill, loud and continuous, from the time when the car passed the middle of the block until the collision occurred. The sound seemed to be coming from the southwest. On the other hand, the operator of the car said that he did not hear the siren until his car was fully into the intersection; and quite a number of passengers, who were witnesses for the defendant, including a man who stood near the operator with his back to the front of the car, testified that they did not hear the siren until about that time. There was also conflict in the testimony as to whether the car or the truck entered the intersection first.

We discuss first the defendant's exceptions relating to the charge to the jury. Its exception thirty-seven, as stated in its bill of exceptions, is as follows: "To that part of the charge of said justice, at said trial, to which the defendant specially excepted, as appears on pages 373 and 374 of said transcript." The transcript of the proceedings at the trial shows that there was one exception taken by the defendant which appears on page 373 and which was taken to a certain part of the charge; that there was an exception taken by the defendant which appears on page 374 and which was taken to another and immediately following and different part of the charge; and that there was another exception which appears on page 374, and which was taken by the defendant to still another part of the charge, given at the request of the plaintiffs. These three exceptions are not covered by any language in the bill of exceptions, outside of exception 37.

This is not a correct way of stating exceptions in a bill of exceptions. But the defendant's counsel briefed and argued these three exceptions separately in this court; and the

plaintiffs' counsel have not objected to their consideration by us on the ground that they were stated as only one exception in the bill. For these reasons only we shall proceed to consider them separately as exceptions 37a, 37b, and 37c.

The defendant's exception 37a is to a certain part of the charge of the trial justice to the jury in which he told them, by quoting from the opinion of this court in *Bosworth* v. *Union R. R. Co.,* 25 R. I. 202, that the established rule as to the duty to its passengers of a common carrier of passengers for hire, as the defendant was, is "that they are bound to exercise the utmost care and skill which prudent men would use under similar circumstances," language which was quoted in that case from *Boss* v. *Providence & Worcester R. Co.,* 15 R. I. 149.

In the part of the charge covered by this exception, he also told the jury, by quoting to them from the opinion of this court in *Elliott* v. *Newport St. R. Co.,* 18 R. I. 707, the following language, which was quoted with approval in the *Bosworth* case, *supra*: "Common carriers of passengers are required to do all that human care, vigilance and foresight reasonably can, in view of the character and mode of conveyance adopted, to prevent accident to passengers." He then added the following language, quoted from the *Bosworth* case: "In approaching any place of danger it is the duty of the common carrier of passengers and its servants to exercise the utmost care, caution, vigilance and skill which prudent men would use under like circumstances."

It is true, as argued by the defendant's counsel in the instant case, that the opinion in the *Bosworth* case from which the trial justice quoted in his charge was in support of a decision overruling a demurrer to a declaration, and that different language was used by this court in overruling the plaintiff's exception to a direction of a verdict for the defendant at a trial of the same case, as reported in 26 R. I. 309. There this court said: "In our opinion, it would be unjust to require a carrier of passengers, either a steam or a street railway company, to exercise the utmost care and

vigilance to guard and protect passengers from criminal acts of strangers, persons not under its control or subject to its orders, and for whose acts it is in no way responsible. And we hold, without further discussion, as respects the acts of such strangers, that carriers of passengers are liable to the exercise of ordinary care and prudence only."

In discussing its former opinion on the demurrer the court approved the result, saying that the declaration stated that the company well knew the danger into which the car was run; and the court also said as to the former opinion: "While the rule as stated is of very general application, it must be limited, at least, to known dangers, when they are occasioned entirely by causes beyond the control of the carrier."

This left in some doubt the proper rule as to the duty of a common carrier to its passengers, where the acts of outside persons or forces are involved in the causation of injuries to a passenger and not merely forces and instrumentalities under the control of the carrier. In the case of *Adams* v. *United Electric Rys. Co.*, 46 R. I. 312, one of the two later cases found by us in our Rhode Island reports which seem to throw light upon the proper rule in this state, this court, at page 315, said: "Common carriers of passengers are bound to exercise for the safety of passengers the highest degree of care and foresight consistent with the orderly conduct of their business with respect to all matters under their control."

It is true, as contended by the defendant's counsel in the instant case, that in that case the plaintiff had been injured by the sudden starting of the car in which she was a passenger, and that no outside persons or forces, not under the control of the carrier, were involved. But the rule was laid down in general terms, without the suggestion of any exception.

The other case just above referred to is *DeNicola* v. *United Electric Rys. Co.*, 55 R. I. 402, where the plaintiff was a passenger in a car of the defendant and was injured in a collision between that car and a vehicle operated by a third

person. At page 404, we said: "The contractual relation that is created when a person becomes a passenger on a street railway car imposes on the company the duty to exercise for the safety of passengers the highest degree of care and foresight consistent with the orderly conduct of its business with respect to all matters under its control in order that it may be in the exercise of due care towards the passenger."

The defendant's counsel in the instant case contends that in that statement of the rule the phrase, "consistent with the orderly conduct of its business," is a vital part of the rule and that it was not contained in the rule as stated by the trial justice in his charge in the instant case. But in the corresponding place in his charge he used the phrase, "in view of the character and mode of conveyance adopted," and with reference to the care to be exercised, one of the quotations which he read to the jury contained the clause, "which prudent men would use under like circumstances." We are of the opinion, therefore, that although the above phrase in the opinion in the *DeNicola* case, *supra,* is better, the charge contained language which was so nearly its equivalent that we should not hold the part of the charge covered by the defendant's exception 37a to be erroneous and prejudicial to the defendant because of the absence of that phrase. We find no merit in that exception.

Defendant's exception 37b is to the following part of the charge: "If the accident happened the way the plaintiffs and their witnesses have testified that the accident happened, then of course the plaintiffs, being in the exercise of due care, the defendant would be guilty of negligence, and the plaintiffs would be entitled to recover the damages they have sustained." Such an instruction is a dangerous one, which should very seldom be given and which can only be justified in a case where facts have been testified to, by the plaintiff's witnesses, in testimony that is consistent and inherently reasonable, and those facts are such that under the rules of law applicable to the case the only conclusion that can reasonably be drawn from them is that the plaintiff is

entitled to a verdict, and no facts that are inconsistent with such conclusion are supported by any testimony by such witnesses.

But in such a case such an instruction is, in our opinion, not erroneous; and a careful examination and consideration of the testimony by the plaintiffs' witnesses in this case, and of the facts shown by such testimony, if accepted as correct, including the city ordinance above quoted, and of the rules of law applicable to such facts have convinced us that the instant case is just such a case.

The plaintiff and another passenger and the two men on the fire truck testified that when it was entering the intersection, with the siren sounding loudly and continuously, the front of the car had not passed the white pole, which was thirty-four feet east of the easterly curb line of Summer street. The plaintiffs, who sat near the forward end of the car, and the same other passenger testified that from the time when the car was passing the middle of the block they distinctly and continuously heard a loud sound from the siren. Assuming that all this testimony was correct, and applying the proper standard of care to the conduct of the motorman, and keeping in mind the city ordinance, we are clearly convinced that if the motorman's hearing was normal and he had exercised the requisite degree of care for the protection of his passengers, he would have heard the siren and realized the danger from the truck in time to avoid the collision.

We find that on the hypothesis above stated the only conclusion that the jury could reasonably and legally have drawn was that the defendant was guilty of negligence and that such negligence was the proximate cause of the collission. It should be noticed also that the trial justice immediately afterwards gave a similar instruction in favor of the defendant, thus showing the jury that he was not favoring one side as against the other. We find that the part of the charge to the jury which is covered by the defendant's ex-

ception 37b was not erroneous or prejudicial to the defendant.

Defendant's exception 37c was to the giving to the jury, at the request of the plaintiffs, of the following part of the charge: "If you find that the defendant's servant was guilty of negligence, then the defendant is not relieved from responsibility for full damages, even though the operator of the fire truck was also guilty of negligence." The defendant's counsel contend that this language was erroneous and prejudicial to the defendant, because the element of proximate cause was not given consideration, and because the jury were told by this language that if the defendant was negligent, it was immaterial whether the fire department of the city was guilty of negligence.

But this contention does not fairly state the meaning of the language complained of. That did not tell the jury that they must return a verdict for the plaintiffs, if they found that the defendant was negligent, without finding also that the defendant's negligence was a proximate cause of the accident. They had previously been distinctly charged to the contrary; and all that they were told in the above-quoted language was, in substance, that the defendant was not relieved from responsibility for the results of its own negligence by the fact that the operator of the fire truck was also negligent.

That the element of proximate cause was not to be disregarded by the jury was made clear by the closing paragraph of this part of the charge that was given at the request of the plaintiffs with reference to the negligence of the defendant and the city fire department, as follows: "If the negligence of both concurred in causing the injury to the plaintiff, the defendant may be held liable for full damages." This was a correct statement of a pertinent rule of law. We are of the opinion that the giving of the part of the charge covered by the defendant's exception 37c was not erroneous.

The defendant's exception 38 is to the refusal of the trial justice to charge the jury as requested by the defendant,

when the jury requested further instructions on two points, one of which was: "Does the sign for outbound cars that says 'Cars stop here' mean that the car should come to a stop at Summer street?"

The sign read, "Outbound cars stop here," and the defendant requested that the jury should be charged, in substance, that the only testimony as to what that sign meant was the testimony of the operator of the street car involved in this case that it meant only that if there were passengers standing at the white post or near the sign, for the purpose of boarding the car, the car would be brought to a stop for the purpose of allowing these passengers to board it at that sign; and that the jury should be charged that they must take the testimony of the operator as true and had no right to draw any other inference as to the meaning of the sign.

The trial justice refused to give the charge as requested, but charged the jury, in substance, that the only testimony as to the meaning of the sign was that of the operator of the car, which had just been reread to them; that they were the judges of the facts; and that if they believed his testimony, they must take it as true. While the testimony of the operator in this particular had in no way been contradicted, his testimony on other points, which were of vital importance in the case, had been directly contradicted by testimony by the plaintiffs and their witnesses. In this state of affairs, it is our opinion that the refusal of the trial justice to charge the jury as requested by the defendant was not erroneous.

The defendant's exception 36 is to the refusal of the trial justice to direct a verdict in its favor in each case, at the conclusion of all the evidence. As shown above, we are of the opinion that the evidence for the plaintiffs, if accepted by the jury as true, was such as to require verdicts in their favor. There was nothing in the evidence for the defendant to make the evidence for the plaintiffs clearly unbelievable or to establish any affirmative defense. We therefore find no merit in that exception.

The defendant's exceptions 39 to 42, inclusive, are to the decision of the trial justice in refusing, on the condition of the remittiturs being filed, to grant the defendant's motions for a new trial. In his rescript he discussed the evidence, both on the question of liability and on that of the amount of damages, with unusual fullness, and, we believe, fairly and adequately, and found that he could not say that the jury were not justified in arriving at their verdicts on liability by a fair preponderance of the evidence presented and upon the law as given them by the court. As above stated, however, he found that the verdicts were excessive in their amounts and he reduced them accordingly.

The evidence was very conflicting both as to liability and as to the amount of damages suffered by each of the plaintiffs. But we cannot say that the trial justice, in deciding on the motions for a new trial, overlooked or misconceived any of the material evidence at the trial or failed to give it proper and impartial consideration, so as to weaken the weight that we should give to his findings on either liability or damages; and we do not find that he was clearly wrong in his findings or conclusions or that the verdicts clearly failed to do substantial justice between the parties. Therefore in our opinion, neither of his decisions on the motions for a new trial was erroneous.

The defendant's exception 35 is to the refusal of the trial justice to take the cases from the jury and pass them, on the motion of the defendant's attorney. This motion was made at the conclusion of the testimony given by the operator of the defendant's car and was based on the facts, appearing in the transcript, that he had been asked, on cross-examination, some questions relating to the condition of his sight and hearing; and that after it had seemed to the trial justice that the defendant's attorney, in examining this witness, had raised his voice somewhat, the plaintiffs' counsel, in cross-examination, had lowered his voice and asked some questions while standing farther away from the witness than the usual distance.

The defendant's attorney contended that these questions and this conduct of the plaintiffs' attorney were so unfair and prejudicial to the defendant that a mistrial should be declared, the jury discharged and the cases passed. We are of the opinion that at any rate there was no such unfairness and prejudice to the defendant as to make it the duty of the trial justice to grant the motion. There was no contention for the plaintiffs that the defendant was negligent in employing an operator whose sight or hearing was below normal, but it seems to us that the state of his sight and hearing at the time of the collision was of some pertinence to the question whether, in the exercise of due care, he should have seen the truck and heard its siren sooner than he testified that he did.

The defendant's exceptions 29 to 34, inclusive, are to rulings by the trial justice permitting some of the above-mentioned questions to be asked of the operator; and the same considerations apply as with regard to exception 35. We do not find that any of these rulings was erroneous and prejudicial to the defendant.

All of the other exceptions not abandoned by the defendant are to rulings on the admissibility of testimony. Nearly all of them relate to testimony on the question of damages. We have examined all of the rulings covered by those of the first twenty-eight exceptions which have not been abandoned; and we find that none of them is erroneous and prejudicial to the defendant.

All of the defendant's exceptions are overruled and each of the cases is remitted to the superior court for the entry of judgment on the verdict as reduced by the remittitur.

*Comstock & Canning, Edward M. Brennan, George A. Johnson,* for plaintiffs.

*Clifford Whipple, Earl A. Sweeney,* for defendant.